DARREN M. HARRIS, Bar No. 190399
**HARRIS GROMBCHEVSKY LLP**
2070 Business Center Drive, Suite 285
Irvine, California 92612
(949) 387-4444 Telephone
(949) 387-4544 Facsimile
dharris@lawfirmhg.com

Attorneys for Plaintiff, GERALD THOMAS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERALD THOMAS<br><br>        Plaintiff,<br><br>    vs.<br><br>CITY OF RIALTO; ANTHONY GLASS, an individual; TRAVON RICKS, an individual; COUNTY OF SAN BERNARDINO; and DOES 1 to 10<br><br>        Defendants. | ) CASE NO.  5:22-cv-1743<br>)<br>) **COMPLAINT FOR DAMAGES**<br>)<br>) 1. Deprivation of Civil Rights –<br>)    Arrest without Probable Cause<br>)    (42 U.S.C. § 1983);<br>) 2. Conspiracy to Interfere with Civil<br>)    Rights – Arrest without Probable<br>)    Cause (42 U.S.C. § 1983);<br>) 3. Deprivation of Civil Rights –<br>)    Violation of and Deliberate<br>)    Indifference to Constitutional<br>)    Rights in Refusal to Investigate<br>)    Evidence Demonstrating Mr.<br>)    Thomas' Innocence (42 U.S.C.<br>)    §1983);<br>) 4.  Conspiracy to Interfere with Civil<br>)     Rights – Refusal to Investigate<br>)     Evidence Demonstrating Mr.<br>)     Thomas' Innocence (42 U.S.C.<br>)     § 1983);<br>) 5.  Deprivation of Civil Rights –<br>)     *Monell* Violations (42 U.S.C. § |

1

**COMPLAINT FOR DAMAGES**

1983);

6. Malicious Prosecution
   (California Common Law and 42
   U.S.C. § 1983);

7. False Arrest/False Imprisonment;

8. Negligence

**DEMAND FOR JURY TRIAL**

## COMPLAINT FOR DAMAGES

Plaintiff GERALD THOMAS ("THOMAS") individually, for his Complaint against Defendants CITY OF RIALTO, ANTHONY GLASS, TRAVON RICKS, COUNTY OF SAN BERNARDINO, and DOES 1-10, inclusive, alleges as follows:

### JURISDICTION AND VENUE

1.      This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiff asserts claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution. This Court has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

2.      Venue is proper in this Court because the parties reside in, and all incidents, events, and occurrences giving rise to this action occurred in the County of San Bernardino, California.

### INTRODUCTION

3.      This civil rights and state tort action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution and state law in connection with the wrongful imprisonment of Plaintiff THOMAS.

2

**COMPLAINT FOR DAMAGES**

## PARTIES

4.      Plaintiff THOMAS is a resident of the County of San Bernardino, California.  He brings this action to obtain compensation for the injuries he suffered because of his over 9 months of wrongful incarceration.

5.      At all relevant times, Defendant CITY OF RIALTO ("CITY") is and was a duly organized public entity, form unknown, existing under the laws of the State of California. CITY is a chartered subdivision of the State of California with the capacity to be sued. CITY is responsible for the acts, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the City of Rialto Police Department ("RPD") and its agents and employees. At all relevant times, Defendant CITY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of RPD and its employees and agents complied with the laws of the United States and the State of California.

6.      At all relevant times, CITY was the employer of City of Rialto Police Department Detective ANTHONY GLASS ("GLASS") and DOES 1-4. At all times relevant herein, Defendant GLASS was employed by and working on behalf of the City of Rialto and City of Rialto Police Department, and resided within the state of California. In his capacity as a City of Rialto Police Detective, he was one of the detectives in charge of investigating the April 23, 2020 shooting of Jose Andres Lira and Terrence Redic.  On information and belief, at all relevant times herein, GLASS was acting under the color of law within the course and scope of his duties as an officer for the CITY and RPD.  GLASS was acting with the complete authority and ratification of his principal, Defendant CITY.

7.      At all relevant times, CITY was the employer of City of Rialto Police Department Detective TRAVON RICKS ("RICKS") and DOES 1-4. At all times relevant herein, Defendant RICKS was employed by and working on behalf of the City of Rialto and City of Rialto Police Department, and resided within the state of California. In his capacity as a City of Rialto Police Detective, he was one of the

**COMPLAINT FOR DAMAGES**

detectives in charge of investigating the April 23, 2020 shooting of Jose Andres Lira and Terrence Redic.  On information and belief, at all relevant times herein, RICKS was acting under the color of law within the course and scope of his duties as an officer for the CITY and RPD.  RICKS was acting with the complete authority and ratification of his principal, Defendant CITY.

8.     Defendants DOES 1-4 were at all relevant times herein employees and officers for the CITY and RPD. At the time of the incident, DOES 1-4 were acting under color of law within the course and scope of their duties as officers for the CITY and RPD. DOES 1-4 were acting with the complete authority and ratification of their principal, Defendant CITY.

9.     Defendants DOES 5-8 were managerial, supervisorial, and policymaking employees of the RPD. At the time of the incident, DOES 5-8 were acting under color of law within the course and scope of their duties for the RPD. DOES 5-8 were acting with the complete authority and ratification of their principal, Defendant CITY.

10.     At all relevant times, Defendant COUNTY OF SAN BERNARDINO ("COSB") is and was a duly organized public entity, form unknown, existing under the laws of the State of California. COSB is a chartered subdivision of the State of California with the capacity to be sued. COSB is responsible for the acts, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the San Bernardino County District Attorney's Office ("SBDA") and its agents and employees. At all relevant times, Defendant COSB was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of SBDA and its employees and agents complied with the laws of the United States and the State of California.

11.     Defendants GLASS, RICKS, and DOES 1-10 are sued in both their individual and official capacities.

12.     On information and belief, GLASS, RICKS, and DOES 1-10 were

**COMPLAINT FOR DAMAGES**

residents of the County of San Bernardino, California.

13.     The true names and capacities of DOES 1-10 are unknown to Plaintiff, who otherwise sues these Defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to show the true names and capacities of these Defendants when they have been ascertained. Each of the fictitiously named Defendants is responsible in some manner for the conduct or liabilities alleged herein.

14.     This is an action for damages and such other and further relief as may be consistent with law pursuant to California state law and 42 U.S.C. §1983, to redress violations of Plaintiff THOMAS'S rights protected by the United States Constitution, by persons acting
under color of state law.

15.     At all times mentioned herein, each and every defendant was the agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every defendant.

16.     All of the acts complained of herein by Plaintiff against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity.  Moreover, Defendants and their agents ratified all of the acts complained of herein.

17.     Plaintiff filed comprehensive claims for damages with RIALTO on January 13, 2022 and with COSB on March 10, 2022 pursuant to applicable sections of the California Government Code.  Plaintiff contends his claims were timely. His causes of action began to accrue at the earliest on September 30, 2021, the date on which the San Bernardino County Superior Court ordered a factual finding of Plaintiff's innocence under *Penal Code* §851.8.  *See e.g.*, *Yount v. City of Sacramento* (2008) 43 Cal.4th 885, 893, 902 (finding that similar considerations under *Heck v. Humphrey* in federal court also apply in state court, including that a civil rights claim

**COMPLAINT FOR DAMAGES**

"is not cognizable…if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,' unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated.'") (quoting *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)); s*ee also e.g., Clarke v. Larry*, No. CV-10-6066-GW (JEM), 2010 WL 3418924, at *4 (C.D. Cal. Aug. 26, 2010); *Drummond v. Desmarais* (2009) 176 Cal.App.4th 439, 458 (Regarding malicious prosecution, "A cause of action for malicious prosecution accrues, and the statute of limitations begins to run, upon entry of judgment in the underlying action"); *Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 217 ("The first element of a malicious prosecution cause of action is that the underlying case must have been terminated in favor of the malicious prosecution plaintiff. The basis of the favorable termination element is that the resolution of the underlying case must have tended to indicate the malicious prosecution plaintiff's innocence."); *see also Collins v. Los Angeles County* (2d Dist. 1966) 241 Cal. App. 2d 451, 457 (false imprisonment claim accrues on termination of imprisonment); *Scannell v. County of Riverside* (4th Dist. 1984) 152 Cal. App. 3d 596, 606; *Torres v. Department of Corrections and Rehabilitation* (2d Dist. 2013) 217 Cal. App.4th 844, 848. Having filed his claims within six months after favorable termination of his underlying incarceration, Plaintiff contends his claims were timely filed.

18.     On March 4, 2022, RIALTO sent a letter erroneously returning THOMAS' claim alleging that it was not presented within six months after the event or occurrence and stating that THOMAS' only recourse is to apply for leave to present a late claim.  While THOMAS contends the claim was timely filed, out of an abundance of caution, THOMAS promptly filed an application with RIALTO to present a late claim on March 14, 2022.  RIALTO then denied THOMAS' application to present a late claim on April 28, 2022.

19.     COSB sent a response on March 21, 2022 indicating that THOMAS' claim was "late" and also insufficient because no County department was identified.

**COMPLAINT FOR DAMAGES**

On March 24, 2022, THOMAS filed an Application to Present Late Claim with COSB.  COSB then mailed a response indicating that "the claim which [Thomas] presented to the County of San Bernardino on 3/11/2022 was rejected on 4/4/2022".

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

20.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 19 of this Complaint with the same force and effect as if fully set forth herein.

**Background**

21.   THOMAS was arrested on October 1, 2020 by members of the City of Rialto Police Department.  From October 1, 2020 until August 11, 2021, THOMAS was falsely arrested and imprisoned for crimes that he did not commit, including attempted murder.  Despite evidence that THOMAS did not commit these crimes, he remained incarcerated for over nine (9) months in San Bernardino County.

22.   THOMAS was factually innocent.  He maintained his innocence the entire time he was incarcerated.  RIALTO employees, including but not limited to GLASS and RICKS acted with a deliberate indifference to or reckless disregard for THOMAS' rights for the truth in withholding evidence from prosecutors, and/or for the right to an eyewitness identification free from improper suggestion, for an investigation free of active concealment of material facts, and/or for the right to due process of law.

23.   Plaintiff THOMAS was not the shooter, nor was he involved in the crime.  Tammerion High was the actual shooter.  There was no murder weapon or other physical evidence implicating THOMAS.  RIALTO employees, including but not limited to GLASS and RICKS, deliberately failed to investigate cell phone placement and DNA identification.  The cell phone data location and DNA actually supported THOMAS' factual innocence.

**COMPLAINT FOR DAMAGES**

**The Crime**

24.   The underlying crime, attempted murder, took place on April 23 2020 on Eucalyptus Avenue approaching McKinley Street in the City of Rialto.  As City of Rialto police officer Matthew Lopez was approaching McKinley Street, he heard two gunshots nearby.  He then saw three subjects running northbound on Eucalyptus Ave from McKinley St.  One of the subjects stopped running and turned southbound. This suspect began running south towards Lopez on the west side of the street and Lopez saw a black handgun in the subject's right hand. Lopez identified the subject as wearing a grey hoodie with the hood on.  Lopez also saw that the subject was wearing a black surgical mask.  Lopez also saw that the suspect was wearing yellow gloves. The suspect continued running southbound on Eucalyptus Avenue.  Officer Lopez exited his patrol vehicle and the suspect turned around and started running northbound.  Lopez followed and ordered the suspect to drop the gun.  As Lopez was aiming his service weapon at the suspect, the suspect put both his hands in the air and continued running northbound towards McKinley Street.  Lopez saw that the suspect jumped the fence to the front of 643 E McKinley Street and then jumped west into the backyard of 637 E. McKinley Street.  The suspect then continued south to the backyard of 636 E. Second Street but Lopez then lost sight of the suspect.

25.   Shortly after the incident, victim Jose Lira told Rialto police offices that he and a friend (later identified as Terrance Redic) were walking eastbound on McKinley Street approaching Eucalyptus Avenue when an unknown male yelled and started walking towards them.  Once in the intersection of McKinley and Eucalyptus, this unknown male pulled out a handgun at which time Lira and Terrance started to run northbound on Eucalyptus Avenue.  Lira heard several gunshots and kept running northbound.  Lira then ran behind a residence on the west side of the street and hid until he was found by officers.  Lira described the suspect as an unknown race male with a grey hoodie and black mask.  Redic apparently fled the scene and was not located by officers.  Lira did not disclose how to contact Redic.

**COMPLAINT FOR DAMAGES**

26.   One of the City of Rialto police officers interviewed Mr. Ruben Gaeta who lived at 189 N. Pampas Avenue.  Mr. Gaeta stated he was inside his garage when he heard a noise his front yard.  As Gaeta walked out of his garage, he observed a subject on his front lawn.  Gaeta noticed the subject had jumped the fence from the house north of Gaeta's house. The subject then ran toward his chain link fence which was about 3 1/2 feet tall.  Gaeta stated it appeared the subject was struggling but eventually was able to jump the chain link fence. After he did, Gaeta stated the subject ran toward a vehicle which was parked on the southwest corner of Second Street and Pampas Avenue. The vehicle was described as possibly a 2018 Honda Civic/Accord.  The subject got into the rear passenger seat and the vehicle took off southbound on Pampas Avenue and then westbound on King Street.  Gaeta described the subject to be thin build, last seen wearing a gray or black hoodie, black pants.

27.   Gaeta specifically told the City of Rialto police officers that when the subject jumped the chain link fence, he dropped his glove.

28.   At the crime scene, City of Rialto police officers collected empty casings, suspected methamphetamine, and white tennis shoes.  The officers also located video surveillance and a magazine with ammunition still in it.  One of the officers also located a yellow glove – the one Gaeta saw that was dropped by the suspect.

29.   Surveillance video retrieved by City of Rialto police officers showed the subject walking along the east sidewalk of Pampas Avenue before making a left (E/b) turn onto King Street.  The subject, who appeared to be a male, was wearing a black hooded sweatshirt, black pants, yellow gloves, and black shoes with a white stripe on the side.  That description matched the description provided by Officer Lopez after the shooting as well as the glove found during the investigation believed to belong to the suspect.

**Investigation**

30.   RPD Detectives GLASS and RICKS, and possibly others, investigated the underlying crime.  At all times, GLASS and RICKS were employed by RIALTO and

**COMPLAINT FOR DAMAGES**

were also acting as agents on behalf of COSB in investigating and subsequently leading to the arrest, incarceration, and prosecution of Plaintiff THOMAS.

31.   On July 14, 2020, GLASS and RICKS spoke with Terrance Redic about the incident.  Redic initially said he did not see who shot at him but saw the gun.  Redic then said the suspect had a black sweater on and the suspect vehicle was blue.  During this interview, Redic viewed a photo of THOMAS from an Instagram account and identified THOMAS as the shooter (although he did not identify THOMAS by name).  Redic said the subject in the picture was wearing the same sweater as the person who shot at him and he saw his face when the suspect vehicle first drove by him.

32.   On September 8, 2020, GLASS and RICKS spoke with Redic again.  Redic stated that he was certain that THOMAS was the person that shot at him. When the officers asked him how he was certain, Redic stated that he could tell by the clothing the suspect was wearing.  Redic also stated that he recognized parts of the shooter's face that was not covered by a black mask the suspect wore at the time of the shooting.  Redic also told these officers that his friend, Jose [Lira], told him that THOMAS used to have problems with Jose when they both attended the same high school.  Redic was not able to articulate exactly how he came to the conclusion of how he determined that THOMAS was the suspect that shot at him.  Redic said he was able to identify THOMAS based on his clothing.  Redic told the officers that the suspect's face was covered with a mask at the time of the shooting.  The officers showed Redic photographs that contained photograph of THOMAS and five other individuals.  Redic selected THOMAS' photograph.

33.   GLASS subsequently spoke with Officer Lopez about the case further.  GLASS was curious as to how far Lopez was from the suspect on the day of the incident.  Lopez stated when the suspect was running toward him, when he saw the suspect had a gun in his hand, Lopez was a distance from about 15-20 feet.  Lopez said the suspect was tall and very skinny and was near six foot in height and less than

150 pounds.  Officer Lopez said the suspect was a black male possibly in his early 20's.

34.   On September 30, 2020, RPD officers conducted surveillance on THOMAS' apartment complex.  When THOMAS later drove away, the officers conducted a traffic stop.  GLASS showed up to the scene and arrested THOMAS for violations of *Penal Code* §§ 664/187(a) and 245(a)(2).

35.   At the time of THOMAS' arrest on September 30, 2020, the officers also obtained from THOMAS "a reference DNA sample to have compared to the items discarded on 04/23/20" (i.e., the yellow glove, the ammunition clip, the shell casings, and the tennis shoes).

36.   At the time of THOMAS' arrest on September 30, 2020, GLASS collected THOMAS' cell phone as evidence.

37.   THOMAS was then booked into West Valley Detention Center.

38.   On October 1, 2020, GLASS obtained a search warrant to search the contents of THOMAS' phone and the offsite ability to extract the data.

39.   GLASS also obtained the discarded glove from the San Bernardino County Sheriff's Department crime lab to compare it to the right handed glove collected during the search warrant. The results showed it was not the same brand of glove.  However, GLASS still concluded that "It could be possible that Thomas used mismatched gloves during the shooting."

40.   GLASS then forwarded his reports and the original report to the San Bernardino County District Attorney's Office for filing of *Penal Code* §§ 664/187(a) and 245(a)(2).

41.   In sum, before the DNA testing on the glove and other items was completed, Thomas was arrested on September 30, 2020 on the basis of victim Terrance Redic's identification of THOMAS.  The officers admitted that they did not initially believe Redic because his story was filled with inaccurate statements and misrepresentations.  But the officers arrested THOMAS anyway.  THOMAS claimed

**COMPLAINT FOR DAMAGES**

he was innocent from the beginning.

42.   The video surveillance retrieved from various houses along the path of the suspect were inconclusive to law enforcement.  However, THOMAS, his mother, and his brother knew exactly who it was.  The video surveillance showed the suspect walking "bow-legged" which was clearly not how THOMAS walked.  This information was shared with law enforcement, including GLASS and RICKS.  They deliberately failed to act.

43.   On December 20, 2020, the DNA results were made available for the glove worn by the suspect and dropped in front of the witness Ruben Gaeta.  The DNA inside the glove was a mixture of 3 individuals.  The results showed that Mr. Thomas' DNA was <u>excluded</u> as being inside the glove.  The DNA on the outside of the glove was a mixture of two individuals.  The results showed that Mr. Thomas' DNA was <u>excluded</u> as being outside the glove.  Defendants did not run the DNA results through CODIS at any time to determine whether there was any match to any individual, including Tamarrion High.

44.   Detectives GLASS and RICKS still would not concede that THOMAS was not the shooter.  He persisted in prolonging the case against THOMAS.

45.   Throughout the investigation, THOMAS' criminal defense counsel (Mr. Rajan Maline) insisted that THOMAS be set free based upon the DNA results.  Mr. Maline also told Defendants that cell phone location data showed that THOMAS was not even near the scene of the shooting when the incident occurred.

46.   GLASS knew that Mr. Tamarrion High was the shooter.  This is the information that THOMAS, his mother, and his brother gave to him.  Most importantly, GLASS knew that THOMAS was <u>not</u> the shooter.

47.   Finally, with help from Deputy District Attorney Evan Acker and Attorney Rajan Maline, a pretext phone call was arranged in September 2021 (date?) wherein GLASS, Acker, and Maline went to the jail and THOMAS had a telephone conversation with Tamarrion High who readily admitted that he was the shooter.

**COMPLAINT FOR DAMAGES**

**Exoneration and Release**

48.     THOMAS was finally released from incarceration on August 11, 2021.

49.     Tamarrion High was arrested and charged for the shooting involving Lira and Redic.  High subsequently pled guilty to charges and is currently serving a 9-year sentence in state prison.

49.     On September 30, 2021, San Bernardino County Superior Court Judge Mary E. Fuller granted a Petition under Penal Code §851.8 with a <u>factual finding of innocence</u> of THOMAS.

50.     Had THOMAS not continued to maintain his innocence and have his attorney continuously produce evidence and facts pointing to THOMAS' innocence, Defendants would have continued to deliberately refuse to consider evidence exonerating THOMAS and THOMAS would have been facing a sentence of life in prison for a crime he did not commit.

**Participation, State of Mind, and Damages**

51.     All Defendants acted under color of law.

52.     Each Defendant participated in the violations alleged herein, or directed the violations alleged herein, or knew of the violations alleged herein and failed to act to prevent them. Each defendant ratified, approved and acquiesced in the violations alleged herein.

53.     As joint actors with joint obligations, each defendant was and is responsible for the failures and omissions of the other.

54.     Each Defendant acted individually and in concert with the other Defendants and others not named in violating Plaintiff's rights.

55.     Each Defendant acted with a deliberate indifference to or reckless disregard for an accused's rights for the truth in withholding evidence from prosecutors, and/or for an investigation free of active concealment of material facts, and/or for the Plaintiff's right to due process of law.

56.     As a direct and proximate result of the aforesaid acts, omissions,

**COMPLAINT FOR DAMAGES**

customs, practices, policies and decisions of Defendants, Plaintiff has suffered great mental and physical pain, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused Plaintiff to sustain damages in a sum to be determined at trial.

57.     THOMAS was imprisoned for over 9 months for a crime he did not commit. He was only 18 years old at the time he was arrested.  He suffered greatly from being unable to visit or see family members.

58.     Due to the acts of the Defendants, Plaintiff has suffered and continues to suffer, and is likely to suffer in the future, extreme and severe mental anguish as well as mental and physical pain and injury. For such injury, Plaintiff will incur significant damages based on psychological and medical care.

59.     As a further result of the conduct of each of these defendants, Plaintiff has lost past and future earnings in an amount to be determined according to proof at trial.

60.     As a further result of the conduct of each of these Defendants, Plaintiff has been deprived of familial relationships.

61.     As a further result of the conduct of each of these defendants, Plaintiff has financial loss for hiring counsel to defend against the baseless claims brought against him by the Defendants.

## FIRST CLAIM FOR RELIEF

**Deprivation of Civil Rights – Arrest without Probable Cause (42 U.S.C. § 1983)**

**(Plaintiff v. Defendants GLASS and RICKS and DOES 1-4)**

62.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 56 of this Complaint with the same force and effect as if fully set forth herein.

63.     The Fourth Amendment of the United States Constitution guarantees all persons the right to be free from unreasonable searches and seizures, including the

**COMPLAINT FOR DAMAGES**

right to be free from arrest without probable cause. 42 U.S.C. § 1983 provides a private right of action for conduct which violates this right.

64.    Defendants GLASS and RICKS and DOES 1-4 acted under color of law.

65.    Defendants GLASS and RICKS and DOES 1-4 detained THOMAS without reasonable suspicion and arrested him without probable cause. By such unlawful arrest, Defendants also caused Plaintiff to be incarcerated for over 9 months.

66.    Defendants named herein, and each of them, were motivated by bad faith in that Defendants had a preference toward finding Plaintiff guilty and their conduct was done with deliberate indifference to and/or reckless disregard of Plaintiff's rights or for the truth.

67.    When Defendants caused Plaintiff to be arrested without probable cause, they violated Plaintiff's right to be secure in his person against unreasonable searches and seizures as guaranteed to Plaintiff under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

68.    As a direct and proximate result of the aforementioned conduct, Plaintiff was wrongfully incarcerated for over 9 months and suffered a loss of liberty, past and future earnings, and emotional distress.

69.    The conduct of Defendants GLASS and RICKS and DOES 1-4 was willful, wanton, malicious, and done with an evil motive and intent and a reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages.

70.    Plaintiff brings this claim individually and seeks general and special damages, in an amount to be determined at trial. Plaintiff also seeks reasonable costs and attorney's fees under 42 U.S.C. § 1988.

## SECOND CLAIM FOR RELIEF

**Conspiracy to Interfere with Civil Rights – Arrest without Probable Cause (42 U.S.C. § 1983) (Plaintiff v. Defendants GLASS and RICKS and DOES 1-4)**

71.    Plaintiff repeats and re-alleges each and every allegation in paragraphs 1

**COMPLAINT FOR DAMAGES**

through 70 of this Complaint with the same force and effect as if fully set forth herein.

72.     Defendants GLASS and RICKS and DOES 1-4 were jointly and severally responsible as investigators assigned to the THOMAS case to avoid making any arrest without probable cause.

73.     Defendants GLASS and RICKS and DOES 1-4 acting under color of law, acted in concert, conspired and agreed to deprive Plaintiff of rights, privileges, or immunities secured by the Constitution and laws of the United States, in particular the right to be free from arrest without probable cause, as elaborated above. Each act to arrest Plaintiff without probable cause, or to fail to free him from arrest or detention, constitutes an overt act in furtherance of said conspiracy. There was an agreement or meeting of the minds to violate Plaintiff's constitutional rights.

74.     Defendants GLASS and RICKS and DOES 1-4 knew or should have known THOMAS was innocent.  In addition, after DNA results conclusively excluded THOMAS, Defendants GLASS and RICKS and DOES 1-4 failed to take action to rectify THOMAS' wrongful incarceration, and secure THOMAS' freedom and release from jail.

75.     Alternatively, as joint actors with joint obligations, each of them was and is responsible for the failures and omissions of each other.

76.     As a direct and proximate result of the aforementioned conduct, Plaintiff was wrongfully incarcerated for over 9 months and suffered a loss of liberty, past and future earnings, and emotional distress.

77.     The conduct of Defendants GLASS and RICKS and DOES 1-4 was willful, wanton, malicious, and done with an evil motive and intent and a reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages.

78.     Plaintiff brings this claim individually and seeks general and special damages, in an amount to be determined at trial. Plaintiff also seeks reasonable costs

**COMPLAINT FOR DAMAGES**

and attorney's fees under 42 U.S.C. § 1988.

## THIRD CLAIM FOR RELIEF

**Deprivation of Civil Rights – Violation of and Deliberate Indifference to Constitutional Rights in Refusal to Investigate Evidence Demonstrating Mr. Thomas' Innocence (42 U.S.C. § 1983)**

**(Plaintiff v. Defendants GLASS and RICKS and DOES 1-4)**

79.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 78 of this Complaint with the same force and effect as if fully set forth herein.

80.     Defendants GLASS and RICKS and DOES 1-4 were jointly and severally responsible as investigators assigned to the Thomas case to share material information with each other, and to ensure that the actual perpetrator of the crimes at issue were being investigated. Instead, Defendants ignored evidence pointing to Tamarrion High as the actual perpetrator, intentionally refused to investigate and implicate Tamarrion High, were deliberately indifferent to THOMAS' constitutional rights and the truth, and deliberately turned their backs on the truth in order to arrest and incarcerate an innocent person. They ignored exculpatory evidence which negated any probable cause to arrest THOMAS. Defendants failed to investigate High. At all relevant times, GLASS and RICKS and DOES 1-4 knew or should have known THOMAS was innocent.  In addition, after THOMAS was arrested and incarcerated, Defendants GLASS and RICKS and DOES 1-4 failed to take action to rectify THOMAS' wrongful incarceration, and secure THOMAS' freedom and release from jail.

81.     With minimal further investigation, the officers would have been able to identify High as the actual shooter, and would have determined THOMAS' innocence. The failure to investigate and identify the true perpetrator was instrumental to Plaintiff's arrest and continued confinement. Minimal further

**COMPLAINT FOR DAMAGES**

investigation would have influenced the decision whether to bring charges against THOMAS and whether to pursue prosecution against him.

82.     Such conduct violated Plaintiff's right not to be deprived of his liberty without due process of law, under the due process clause of the Fourteenth Amendment. Plaintiff brings this claim as both a procedural and a substantive due process violation. To the extent that any court were to conclude that the source of Plaintiff's right is a constitutional source other than due process (such as the Fourth Amendment), this claim is brought on those bases as well.

83.  Such conduct also caused Plaintiff's other rights to be violated, including Plaintiff's right not to be arrested without probable cause under the Fourth Amendment.

84.     Defendants GLASS and RICKS and DOES 1-4 were each jointly and severally responsible to investigate High while handling the Thomas case to prevent arrest and prosecution of an innocent man. Each engaged in, knew or should have known of the unconstitutional conduct alleged herein and failed to prevent it, which each had a responsibility to do, and each ratified, approved or acquiesced in it.

85.     Defendants' conduct was done with deliberate indifference to and/or reckless disregard of Plaintiff's rights or for the truth.

86.     As a direct and proximate result of the aforementioned conduct, and violations of THOMAS' constitutional rights under the Fourth and Fourteenth Amendments, Plaintiff was wrongfully incarcerated for over 9 months and suffered a loss of liberty, past and future earnings, and emotional distress.

87.     The conduct of Defendants GLASS and RICKS and DOES 1-4 was willful, wanton, malicious, and done with an evil motive and intent and a reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages.

88.     Plaintiff brings this claim individually and seeks general and special damages, in an amount to be determined at trial. Plaintiff also seeks reasonable costs

**COMPLAINT FOR DAMAGES**

and attorney's fees under 42 U.S.C. § 1988.

## FOURTH CLAIM FOR RELIEF

### Conspiracy to Interfere with Civil Rights – Refusal to Investigate Evidence Demonstrating Mr. Thomas' Innocence (42 U.S.C. § 1983)

### (Plaintiff v. Defendants GLASS and RICKS and DOES 1-4)

89.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 88 of this Complaint with the same force and effect as if fully set forth herein.

90.     Defendants GLASS and RICKS and DOES 1-4 were jointly and severally responsible as investigators assigned to Mr. Thomas' case to investigate Tamarrion High so as to avoid violating THOMAS' rights to due process, not to be arrested without probable cause, and not to be incarcerated.

91.     Defendants GLASS and RICKS and DOES 1-4 acting under color of law, acted in concert, conspired and agreed to deprive Plaintiff of rights, privileges, or immunities secured by the Constitution and laws of the United States, in particular the rights to due to process, not to be arrested without probable cause, and not to be incarcerated. Each failure to investigate High or ignore information that he was the true perpetrator, as well as other actions related to them, constitutes an overt act in furtherance of said conspiracy. There was an agreement or meeting of the minds to violate Plaintiff's constitutional rights.

92.     Defendants not to be incarcerated and DOES 1-4 knew or should have known THOMAS was innocent. In addition, after Mr. Thomas was arrested and incarcerated, Defendants and DOES 1-4 failed to take action to rectify THOMAS' wrongful arrest and incarceration, and secure THOMAS' freedom and release from jail.

93.     Alternatively, as joint actors with joint obligations, each of them was and is responsible for the failures and omissions of each other.

94.     As a direct and proximate result of the aforementioned conduct, Plaintiff

**COMPLAINT FOR DAMAGES**

was wrongfully incarcerated for over 9 months and suffered a loss of liberty, past and future earnings, and emotional distress.

95.    The conduct of Defendants GLASS and RICKS and DOES 1-4 was willful, wanton, malicious, and done with an evil motive and intent and a reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages.

96.    Plaintiff brings this claim individually and seeks general and special damages, in an amount to be determined at trial. Plaintiff also seeks reasonable costs and attorney's fees under 42 U.S.C. § 1988.

## FIFTH CLAIM FOR RELIEF

### Deprivation of Civil Rights – *Monell* Violations (42 U.S.C. § 1983)

### (Plaintiff v. Defendants City of Rialto and County of San Bernardino and DOES 5-8)

97.    Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 96 of this Complaint with the same force and effect as if fully set forth herein.

98.    Defendants GLASS and RICKS and DOES 1-4 as alleged above led to deprivations of Plaintiff's constitutional rights, causing his wrongful arrest and incarceration.  They acted pursuant to an expressly adopted official policy or longstanding practice or custom of Defendants CITY OF RIALTO, COUNTY OF SAN BERNARDINO and policymakers DOES 5-8.

99.    Plaintiff is informed and believes and thereupon alleges that, at all times herein mentioned, Defendants CITY OF RIALTO, COUNTY OF SAN BERNARDINO and DOES 5-8, with deliberate indifference and conscious and reckless disregard to the safety, security and constitutional and statutory rights of Plaintiff, engaged in the unconstitutional conduct and omissions, which consist of the following customs and/or policies:

a. The knowing presentation of false evidence by officers;

20

**COMPLAINT FOR DAMAGES**

b. The deliberately indifferent presentation of false evidence by officers;

c. The presentation of false evidence by officers in reckless disregard for the truth or the rights of the accused;

d. Officers' failure to provide exculpatory evidence to prosecutors trying the case involving the criminal defendant;

e. Failing to adequately train, supervise and control its officers in the investigation and questioning of eyewitnesses

f. Failing to adequately train, supervise and control its officers to disclose to the deputy district attorney prosecuting a defendant all exculpatory and impeachment information, including *Giglio v. United States*, 405 U.S. 150 (1972).

g. Failing to adequately discipline officers involved in dishonesty or otherwise abusing their authority; and

h. Condoning and encouraging officers in the belief that they can violate the rights of persons such as Mr. Thomas without impunity, and that such conduct will not adversely affect their opportunities for promotion and employment benefits.

100.   The actions and inactions of the Rialto Police Department were known or should have been known to the policy makers responsible for the Rialto Police Department and occurred with deliberate indifference to either the recurring constitutional violations elaborated above, and/or the strong likelihood that constitutional rights would be violated as a result of failing to train, supervise or discipline in areas where the need for such training and supervision was obvious.

101.  Training policies of the City of Rialto were inadequate to train officers to handle the usual and recurring situations with which they must deal.

102.  The final policymakers DOES 5-8 acted under color of state law. They had final policymaking authority from the municipal Defendants CITY OF RIALTO,

21

**COMPLAINT FOR DAMAGES**

COUNTY OF SAN BERNARDINO concerning the acts and failures of the individual defendants. On information and belief, these final policymakers ratified the acts of Defendants GLASS and RICKS and DOES 1-4, that is, DOES 5-8 knew of and specifically made a deliberate choice to approve GLASS and RICKS and DOES 1-4's acts and failures to act.

103.   The actions and inactions of the Rialto Police Department set forth herein caused and resulted in Plaintiff's wrongful arrest and incarceration, and /or are so closely related to the deprivation of Plaintiff's constitutional rights as to be the moving force that caused Plaintiff's injuries as set forth in the Complaint.

104.   As a direct and proximate result of Defendants CITY OF RIALTO, COUNTY OF SAN BERNARDINO's acts and omissions, condoning, encouraging, ratifying and deliberately ignoring the pattern and practice of Defendants GLASS and RICKS and DOES 1-4's acts and omissions, Plaintiff sustained injury and damage.

105.   As a result of defendants', and each of their, violations of THOMAS' constitutional rights as set forth herein, THOMAS was damaged as alleged above.

## SIXTH CLAIM FOR RELIEF

**Malicious Prosecution (California Common Law and 42 U.S.C. § 1983)**

**(Plaintiff v. Defendants GLASS, RICKS, CITY OF RIALTO,**

**COUNTY OF SAN BERNARDINO, DOES 1-4 and 9-10)**

106.   Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 105 of this Complaint with the same force and effect as if fully set forth herein.

107.   Defendants GLASS, RICKS, CITY OF RIALTO, COUNTY OF SAN BERNARDINO, DOES 1-4 and 9-10, while acting under color of law, deprived Plaintiff of his civil rights, more particularly, his right to be free from malicious prosecution.

108.   The defendants contributed to, caused, or initiated a criminal prosecution against Mr. Thomas with malice and/or with the purpose of depriving him of his

constitutional rights. They did not have probable cause to arrest or prosecute him. The prosecution ultimately terminated in THOMAS' favor, due to his factual innocence and him being released from detention.  At all relevant times, Defendants knew or should have known THOMAS was innocent.  In addition, after THOMAS was arrested and incarcerated, Defendants failed to take action to rectify THOMAS' wrongful arrest and detention, and secure THOMAS' freedom and release from jail.

109.   Plaintiff brings this claim under both California state and federal law. The constitutional source against malicious prosecution is primarily the due process clause of the Fourteenth Amendment, and Plaintiff's due process rights were violated by the conduct alleged herein. Plaintiff brings this claim as both a procedural and substantive due process violation. To the extent that any court were to conclude that the source of Plaintiff's right to be free from malicious prosecution is any constitutional source other than due process (such as the Fourth Amendment or Sixth Amendment right to a fair trial), this claim is brought on those bases as well.

110.   Defendants GLASS and RICKS, and DOES 1-4 and 9-10 were each jointly and severally responsible not to bring a malicious prosecution against THOMAS. Each engaged in, knew or should have known of the unconstitutional conduct alleged herein and failed to prevent it, which each had a responsibility to do, and each ratified, approved or acquiesced in it.

111.   CITY OF RIALTO is vicariously liable for the wrongful acts of GLASS and RICKS and DOES 1-4 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

112.   COUNTY OF SAN BERNARDINO is vicariously liable for the wrongful acts of GLASS and RICKS as its agents, and DOES 9-10 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of

**COMPLAINT FOR DAMAGES**

employment if the employee's act would subject him or her to liability.

113.   As a direct and proximate result of the aforementioned conduct, Plaintiff was wrongfully arrested and incarcerated for over 9 months and suffered a loss of liberty, past and future earnings, and emotional distress.

114.   The conduct of Defendants GLASS and RICKS and DOES 1-4, 9-10 was willful, wanton, malicious, and done with an evil motive and intent and a reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages.

115.   Plaintiff brings this claim individually and seeks general and special damages, in an amount to be determined at trial.  Plaintiff also seeks reasonable costs and attorney's fees under 42 U.S.C. § 1988.

## SEVENTH CLAIM FOR RELIEF

### False Arrest and False Imprisonment

### (Plaintiff v. Defendants GLASS, RICKS, CITY OF RIALTO, COUNTY OF SAN BERNARDINO, DOES 1-4 and 9-10, DOES 1-4 and 9-10)

116.   Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 115 of this Complaint with the same force and effect as if fully set forth herein.

117.   Defendants GLASS, RICKS, CITY OF RIALTO, COUNTY OF SAN BERNARDINO, DOES 1-4 and 9-10, while acting within the course and scope of their duties either as police officers for the RPD or as deputy district attorneys for the San Bernardino County District Attorney's Office, intentionally deprived Plaintiff of his freedom and freedom of movement by menace, fraud, deceit, and unreasonable duress. Defendants without reasonable suspicion or probable cause arrested Plaintiff.

118.   Defendants knew or should have known THOMAS was innocent.  In addition, after THOMAS was arrested, Defendants failed to take action to rectify THOMAS' wrongful arrest and incarceration, and secure THOMAS' freedom and release from jail, thereby enforcing his continued false imprisonment as a continuing

**COMPLAINT FOR DAMAGES**

violation throughout more than 9 months.

119. CITY OF RIALTO is vicariously liable for the wrongful acts of GLASS and RICKS and DOES 1-4 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

120. COUNTY OF SAN BERNARDINO is vicariously liable for the wrongful acts of GLASS and RICKS as its agents, and DOES 9-10 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

121. As a direct and proximate result of the aforementioned conduct, Plaintiff was wrongfully arrested and incarcerated for over 9 months and suffered a loss of liberty, past and future earnings, and emotional distress.

122. The conduct of Defendants GLASS and RICKS and DOES 1-4, 9-10 was willful, wanton, malicious, and done with an evil motive and intent and a reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages.

123. Plaintiff brings this claim individually and seeks general and special damages, in an amount to be determined at trial. Plaintiff also seeks reasonable costs and attorney's fees under 42 U.S.C. § 1988.

## EIGHTH CLAIM FOR RELIEF

### Negligence

### (Plaintiff v. Defendants GLASS, RICKS, CITY OF RIALTO, COUNTY OF SAN BERNARDINO, DOES 1-4 and 9-10)

124. Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 123 of this Complaint with the same force and effect as if fully set forth herein.

**COMPLAINT FOR DAMAGES**

125.   Police officers, including Defendants GLASS and RICKS and DOES 1-4, have a duty to use reasonable care to prevent harm or injury to others. This duty includes, but is not limited to, not arresting persons without reasonable suspicion or probable cause; not using improper, suggestive, or coercive techniques to procure false eyewitness identifications; using false evidence; fabricating evidence; failing to disclose exculpatory evidence; investigating proper suspects; and not maliciously arresting or causing the wrongful incarceration of innocent persons. Law enforcement agencies also have a duty to properly hire, train, and supervise police officer employees.

126.   Defendants GLASS and RICKS and DOES 1-4 breached this duty of care.  Upon information and belief, the actions and inactions of Defendants were negligent and reckless, including but not limited to:

> (a) The failure to properly and adequately assess the need to detain and arrest Plaintiff;
>
> (b) Arresting Plaintiff without probable cause or reasonable suspicion;
>
> (c) Using false evidence;
>
> (d) Fabricating evidence;
>
> (e) Failing to disclose exculpatory evidence;
>
> (f) Failing to investigate High, who was a known suspect;
>
> (g) Causing the wrongful arrest and incarceration of Plaintiff.

127.   Defendant CITY OF RIALTO also failed to properly hire, train, and supervise police officer employees in order to prevent the wrongful arrest and incarceration of Plaintiff.

128.   Defendants COUNTY OF SAN BERNARDINO also failed to properly hire, train, and supervise deputy district attorneys and others in order to prevent the wrongful arrest and incarceration of Plaintiff.

129.   Each of the Defendants knew or should have known THOMAS was innocent.  In addition, after THOMAS was arrested, Defendants failed to take

**COMPLAINT FOR DAMAGES**

action to rectify THOMAS' wrongful arrest, and secure THOMAS' freedom and release from jail, thereby enforcing his continued false imprisonment as a continuing violation throughout more than 9 months.

129.   CITY OF RIALTO is vicariously liable for the wrongful acts of GLASS and RICKS and DOES 1-4 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

130.   COUNTY OF SAN BERNARDINO is vicariously liable for the wrongful acts of GLASS and RICKS and DOES 9-10 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

131.   As a direct and proximate result of the aforementioned conduct, Plaintiff was wrongfully arrested and incarcerated for over 9 months and suffered a loss of liberty, past and future earnings, and emotional distress.

132.   The conduct of Defendants GLASS and RICKS, and DOES 1-4, 9-10 was willful, wanton, malicious, and done with an evil motive and intent and a reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages.

133.   Plaintiff brings this claim individually and seeks general and special damages, in an amount to be determined at trial. Plaintiff also seeks reasonable costs and attorney's fees under 42 U.S.C. §1988.

## PENDING PETITION IN THE SUPERIOR COURT

Because the City of Rialto rejected Plaintiff's Application for Leave to Present a Late Claim, Plaintiff has filed a petition for an order relieving him from Government Code Section 945.4 with respect to his California state law claims

27

**COMPLAINT FOR DAMAGES**

against the City of Rialto and its agents and employees, pursuant to California Government Code Section 946.6.  The court has not yet scheduled a hearing date.

## **PRAYER**

WHEREFORE, Plaintiff prays judgment against Defendants and each of them, as to each claim for relief as applicable, as follows:

1. For General and Special Damages according to proof;

2. For Exemplary Damages as provided by law; in an amount to be proved against each individual Defendant;

3. For Attorney's Fees pursuant to 42 U.S.C. 1985 and 1988;

4. For Costs of Suit; and

5. For such other and further relief as the Court may deem proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues.

DATED: September 4, 2022                    HARRIS GROMBCHEVSKY LLP

BY: _____
DARREN M. HARRIS
Attorneys for Plaintiff,
GERALD THOMAS

28

**COMPLAINT FOR DAMAGES**